## Clarke v. Nicholls

Thomas Clarke late of Plymouth plantiff against the Goods or Estate of John Nicholls sonn to Mordecay Nicolls late of Boston deceased in the possession of John Wiswall Sn$^r$ Guardian to the said John Nicholls Def$^t$ in an Action of the case for non payment for disburstments which the s$^d$ Clarke hath laid out in building a new howse upon the Ground & repayring the old howseing of the said John Nicholls at the request of his Mother late wife to the said Thomas Clarke & vpon her promise that the said Clarke should be [3] paid for the same out of her Estate which Disburstments haue beene apprized at seauenty fiue pounds with interest & other due Damages according to Attachm$^t$ Dat the 26th of 8$^{br}$ 1671 . . . the Jury . . . brought in a spetiall verdict Viz$^t$ If man & wife haue power to make bargains one with another y$^t$ will stand good in Law then wee finde for the plantiffe seauenty fiue pounds & Costs of Court if not wee finde for the Defend$^t$ costs of Court. The Magistrates on perusall of this case & Verdict Judg$^d$ for the Defend$^t$ costs of Court the plantiff appealed from this Judgment to the next Court of Assistants & the said Thomas Clarke as prinsipall in seaventy fiue pounds & John Saffin & Anthony Chickley in thirty fiue pounds apeice acknowledged

themselues bound to the Tresurer of the County of Suffolke & parties conserned on condicion that the s$^d$ Clarke shall prosecute his Appeale from the Judgment of this Court to the next Court of Assistance to efect.

[ On June 28, 1660, James Balston of Boston, ship-carpenter, deeded to Mordecai Nicholls a house and land in Boston "on highway next to Mr. Clarke" (S. F. 1404.5). The house was a modest one of two stories, with two rooms to a floor. Mordecai appears to have been a seafaring man turned shopkeeper; he dealt in canvas, cottons and woolens. His estate, valued on April 25, 1664, after his death, included the housing and grounds, 150$l$, a barque and her cargo, 159$l$ 18$s$ 6$d$; "sow & piggs in the yard," 1$l$; furniture "in the parlor," including one standing bedstead and a trundle bed, 8$l$; the stock of cloth was kept "in the Chamber over the parlor"; the total valuation was 532$l$ 17$s$ 3$d$ (S. F. 1404.7). Shortly after this, the widow Nicholls made an agreement with Thomas Clarke who was to be her next husband. In S. F. 1179.4 is the following copy of this "bargain":

This writing witnesseth. Between Thomas Clarke late of Plymouth, yeoman, and Alice Nicholls of Boston, widdow That whereas there is an intent of marriage between the s$^d$ partys the Lord succeeding theire intentions in convenient time: The Agreement therefore is that the houseing & Land now in the possession of the s$^d$ Alice Nicholls shalbee reserved as a Stock for her Son, John Nicholls for him to enjoy & posses at the age of twenty and one years in the meanetime to bee improved by the parents towards his Education: Also that what Estate of hers the s$^d$ Alice shalbee found & comitted to the s$^d$ m$^r$ Clarke — if it should so please the Lord to take the s$^d$ Alice out of this Life before the s$^d$ Thomas Clarke Shee shall then have then power to dispose of all the s$^d$ Estate sometimes hers so as it seemes good unto her: — moreover — if it shall please the Lord to take away the s$^d$ Thomas Clarke by death, before the s$^d$ Alice She Surviving, then the s$^d$ Alice shall have and enjoy her own Estate Shee brought with her or the value thereof and two hundred pounds added thereto of the Estate Left by the s$^d$ Thomas Clarke all which the s$^d$ Thomas Clarke doth hereby promise and binde himselfe to allow of and performe as a Covenant upon theire marriage — In Witness of all which, the s$^d$ Thomas Clarke hath Signed and Sealed this present writing unto Peter Oliver and William Bartholmew of Boston for the use and behoofe of the s$^d$ Alice Nicholls. Dated this twentieth day of January, 1664.

per me Thomas Clarke & a Seale

After this agreement a somewhat different arrangement to safeguard the stepson's rights in his mother's property was concluded by the Court on February 3, 1664/5 (S. F. 1404.7):

At a County Court held at Boston 3$^d$ Feb° 1664

This Court being informed that since the Inventory of Mordecai Nicholls was produced in Court, the providence of god by the loss of the vessall & seu$^r$all debts due to the s$^d$ Estate thereby falling short to the value of two hundred pounds & odde & the widdow being ready to dispose of herselfe: The Court judged it

meete to order that the house & Land mentioned in the Inventory at one hundred & Fifty pounds shalbee & is hereby secured to bee part of John Nicholls hir Sonnes portion; And that the s^d widdow Alice Nicholls his mother shall Satisfy & pay unto her s^d Sonn — at the age of Fourteen yeares the Sume of Fifty pound more besides the s^d house & Land to his Guardian to bee improved for his use till hee come to age, & the mother to haue the use of the Sonnes portion — till that time hee come of age to choose his Guardian; for his Education—, & in the meane time the mother & Cap^t Clapp are appointed his guardians & that the mother the widdow haue all the rest of the Estate as her portion — & in case the Childe dye before hee attaine his age, the mother to haue the whole.

Allowed & approved of by the Court
Edw: Rawson Record^r

Having married the widow Nicholls, Thomas Clarke moved into her house, which proved to be somewhat cramped. The neighbors reported their conversation (S. F. 1179.9):

Judith Snowsell aged about Seaven & Thirty yeares deposeth upon oath . . . m^r Clark & his wife being at o^r house, they began a discourse about the house they lived in: Shee saying it was old and that hee would doe well to build her a new house But m^r Clarke made answer that he would never doe any such thing as to build upon anoth[er] mans ground Then shee replyed y^t hee needed not to feare his satisfaction againe in case hee did build for her for shee said the rent of her house would in time pay him: But m^r Clarke made answer that such paym^t would not doe, For hee said y^t would bee a long time in paying indeed And further this depon^t saith that shee told hir husband that what estate hee had was hers: and what was hers was her owne And further saith that her husband demanded to see her Inventory But shee tould him hee should never see it while shee lived And further this depon^t Saith that m^rs Lake being at o^r house told this deponent that shee was going to see m^s Clarke, for shee was informed as shee said that her husband would not allowe her things that were fitting for her, but was very Churlish and dogged to her. But this depon^t tould m^rs Lake that m^s Clarke wronged her husband in the same very much for hee would allowe things y^t were Sufficient for her but shee would not allowe thereof her selfe And thereupon this depon^t went along w^th m^s Lake to m^r Clarkes house at that time when m^s Lake did aske m^s Clarke if her husband would not allowe her things y^t were Covenient for her: For shee tould her y^t shee heard hee would not. But shee did then disowne to m^s Lake and my selfe what was reported concerning her husband as to that particular And further this deponent Saith that shee being at m^s Clarkes house one day the said m^r Clarke came in and brought w^th him a small leg of mutton and a peece of fresh beefe and shee found fault with him for bringing in soo much meate and tould him y^t a pound of beefe at a tyme was enough for to bring in: But hee made answer that if shee did not like it shee might let it alone for hee said hee would not make him selfe a laughing stocke to bring in soe little meate at a tyme And further this deponent Saith not

Taken upon oath this 30th octob^r 1671
Before mee Humphry Dauie [1] Comiss^r

_____

[1] Son of Sir John Davie, Bt., and father of John Davie, Harvard, A.B. 1681, who was informed of his succession to the baronetcy when working on his farm in Groton, Connecticut.

William, John and Andrew Clarke, aged respectively 37, 30, and 25 years, deposed (S. F. 1179.11-12) that their father, upon their stepmother's continued request, and her promise to pay for it, built the new house, leanto, and shop in Boston, and repaired the old one; the improvements were apprized at 75*l* but cost above 100*l*. Also (S. F. 1179.7):

The testemony of Rodger Clap Aged sixty two years or thereabouts. Saith that m$^r$ Thomas Clarke hauing taken Downe one end of the howse which was Mordecay Nicolls & built a new Roome in the place did shew me the new roome & said that it had cost him a great deale of money but hee did keepe an Accoumpt of itt & did intend that it should bee in part of that two hundred pounds which his wife was to have out of his Estate after his death this deponent asked him how if his wife should dye before him he Answered then hee would freely giue it to John and would have noething for itt.

Taken upon Oath the 31st of 8th m° 1671 before mee Anthony Stoddard Comiss$^r$

Owned in Court by Cap$^t$ Clap . . . as Attests Free Grace Bendall Cler.

Alice Clarke died before her second husband. Her son John Nicholls, then aged seventeen, chose as guardian Elder John Wiswall (S. F.1179.8), who was obliged to seek the aid of the court to obtain possession of his ward's house, land, and 50*l*, as appears by the following record (S. F. 1179.3):

At a County Court held at Boston 25th of 5 m° 1671

Elder John Wiswall guardian to John Nicholls pl$^t$ against Thomas Clarke Defend$^t$ in an Action of the Case for with holding an Estate left by his mother Alice Clarke by will which will was made according to contract before her marriage with the said Thomas Clarke beeing formerly the Estate of Mordecay Nicolls his father Deceased being an Estate for the most part of moveables & Debts & all Due Damages according to Attachm$^t$ & at the 20th of the fifth month 1671 After the Attachm$^t$ & Evidences in the case produced were read comitted to the Jurie & are on file with the record of this Court the Jurie brought in their verdict they found for the plantiff, that the Defend$^t$ deliver all y$^e$ Estate now in his Custody or that he hath any wayes disposed of or did belong to his Late wife Alice that was hers before marriage with him except what was disposed of by a former verdict this is to be deliuered to the plantiff for the use of John Nicholls or two hundred pound damage in money & costs of Court.

Thomas Clarke then sued his stepson, as appears from the entry, in order to recover the cost of repairing the old house and building the new one. In his "Reasons of Appeale" from this judgment, dated February 28, 1671/2 (S. F. 1179.8), Thomas Clarke rehearses the fact of his contract with the widow Nicholls and declares that the court order of February 3, 1665, had never been made known to him, nor had her first husband's inventory. He argues that if his wife had had the right to devise property by will, she had the right to make a "bargain" with

her future husband, and that this pre-nuptial agreement was a valid contract of which the court should have taken cognizance. "The Jurys verdict being as it is, I am doubtfull whether the Honorable Court Considered my Case as it is Circumstanced per the S<sup>d</sup> Contract." He concludes (S. F. 1179.8):

My Wife & I although as man & Wife one, in personall relation yet Considering our Relation to y<sup>e</sup> Contract two in Estates . . . & Soe Shee noe femm Couert nor under Couert Barron — And might as well make bargaines with mee in hir Life as make a will at hir Death, and If Shee hath power to giue mee a legacy, much more hath Shee power to pay hir debts, debts being allways to bee paid before Legacys. . . .

Instead of admitting an appeal, the Court of Assistants apparently ordered a review of the case by the same court. This was done at the Spring session of 1672 — see pp. 98–9, below.]